<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY FORTUNATO, et al., | : |
| Plaintiffs, | : Civil Case No. 06-5976 (FSH) |
| v. | : **OPINION** |
| UNITED STATES OF AMERICA, | : Date: November 3, 2008 |
| Defendant. | : |

<u>**HOCHBERG, District Judge**</u>

    This matter having come before the Court on a motion for partial summary judgment, pursuant to Fed. R. Civ. P. 56 by Defendant United States of America ("United States") and this Court having reviewed the submissions of the parties without oral argument pursuant to Fed. R. Civ. P. 78; the Defendant's motion for partial summary judgment is granted in part.[1]

---

[1] Defendant moves for summary judgment on counts 7, 24, 40 and 56, which concern disclosures allegedly made to Kenneth Catanzarite. On August 13, 2008, Magistrate Judge Shwartz granted the parties' request for permission to depose Kenneth Catanzarite outside of the discovery period in order for such testimony to be offered at trial. Judge Shwartz set a September 30, 2008 deadline for the completion of the deposition. The parties did not comply with that initial deadline, prompting a telephone conference with Judge Shwartz on October 17, 2008. During that conference, Defendant represented that the Mr. Catanzarite's deposition was not needed to resolve this motion. Plaintiffs, however, asserted that the Court could not grant summary judgment with respect to these counts in the absence of the deposition. In order to "ensure that the plaintiff does not attempt to revisit any summary judgment rulings based upon the absence of the deposition," Judge Shwartz issued an Order on October 20 requiring the parties to complete Mr. Catanzarite's deposition before October 30 and to make any supplemental submissions relating to the pending Motion for Summary Judgment before November 10.

## I.  BACKGROUND

Plaintiffs filed this wrongful disclosure suit against the United States pursuant to 26 U.S.C. § 7431 seeking damages for the alleged disclosure of tax information made by an employee of the Internal Revenue Service in violation of 26 U.S.C. § 6103.

Robert Fortunato passed away on November 4, 2002, leaving his brother, Anthony Fortunato, as the executor of his estate (the "Estate").  In April 2005, the Internal Revenue Service began a civil tax examination and audit of the Estate.  Estate Tax Attorney Jay Goldenberg ("Goldenberg") was assigned to the matter.  The examination required Goldenberg to determine whether Robert Fortunato owned an interest in St. George Trucking and Warehousing Co. of California ("StG-CA") and/or St. George Trucking and Warehousing Co. of New Jersey ("StG-NJ," collectively the "St. George Companies") which was omitted from the Estate's tax return, resulting in an under-reporting of the amount of estate tax owed by the Estate.  Plaintiffs contend that Robert did not own an interest in the St. George Companies.

During the course of his investigation, Goldenberg contacted and interviewed a number of third-party witnesses to obtain information relating to the ownership of the St. George Companies.  These witnesses included Seth Tendler, David San Paolo, Jack Ruse, Michael Cho, Robert Scamardella, Jorge Cruet, Michael Molfetta, Frank Molfetta, Robert Molfetta, Peter

---

By letter dated October 30, 2008, Plaintiffs' counsel notified the Court that Mr. Catanzarite has refused to appear for his deposition.  Accordingly, the parties were again unable to comply with Judge Shwartz's scheduling orders and the Court is now unable to properly evaluate this motion as it relates to alleged disclosures to Mr. Catanzarite.  As a result, Defendant's Motion for Partial Summary Judgment is stayed with respect to those counts concerning Mr. Catanzarite, pending further submissions by the parties after Mr. Catanzarite's deposition is completed.

Ehrenberg, Edward O'Donnell, Kenneth Catanzarite and Jerome Kootman.[2] Plaintiffs allege that through his communication with these witnesses, Goldenberg made unauthorized disclosures of Plaintiffs' tax return information in violation of Section 6103.

On December 13, 2006, Plaintiffs filed a wrongful disclosure suit pursuant to 26 U.S.C. § 7431, seeking actual damages and punitive damages for multiple counts of unauthorized or wrongful disclosure. Plaintiffs have since refined their claims and now seek only statutory damages, in the amount of $1,000 for each act of unauthorized disclosure of a return or return information, and punitive damages. After a period of discovery in which all but one of the above-listed witnesses were deposed, Defendant moved for partial summary judgment.

## II. STANDARD OF REVIEW

Pursuant to Rule 56(c), a motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it might affect the outcome of the case, and an issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 322-26; *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (2007). All facts and inferences must be construed "in the light most favorable to the non-moving party." *Peters v. Delaware River Port Auth.*, 16 F.3d 1346, 1349 (3d Cir. 1994).

---

[2] Plaintiffs initially alleged wrongful disclosures were made to Dr. Harley Liker and Tony Lu. Plaintiffs have since voluntarily dismissed these counts. Accordingly, the incidents regarding those witnesses are not discussed herein.

3

The party seeking summary judgment must initially provide the court with the basis for its motion. *Celotex Corp.*, 477 U.S. at 323. This requires the moving party to either establish that there is no genuine issue of material fact and that the moving party must prevail as a matter of law, or demonstrate that the nonmoving party has not shown the requisite facts relating to an essential element of an issue on which it bears the burden. *Id.* at 322–23. Once the party seeking summary judgment has carried this initial burden, the burden shifts to the nonmoving party. To avoid summary judgment, the nonmoving party must demonstrate facts supporting each element for which it bears the burden, and it must establish the existence of "genuine issue[s] of material fact" justifying trial. *Celotex Corp.*, 477 U.S. at 324.

Once a moving party satisfies its initial burden of establishing a *prima facie* case for summary judgment under Fed. R. Civ. Pro. 56(c), the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must set out specific facts showing a genuine issue for trial using affidavits or as otherwise provided in Fed. R. Civ. Pro. 56(e).

### III.  DISCUSSION

**A.  Sections 6103 and 7431 of the United States Tax Code**

Section 7431 of the Code establishes a cause of action for damages against the United States where any United States officer or employee knowingly, or by reason of negligence, discloses tax return information in violation of Section 6103. In order to prevail under Section 7431, a "plaintiff must demonstrate a violation of Section 6103, and that the violation resulted

from knowing or negligent conduct." *Venen v. United States*, 38 F.3d 100, 104 (3d Cir. 1994) (internal quotations omitted).

Section 6103 generally prohibits the disclosure of tax return information by an officer of the United States. "Return information," defined in Section 6103(b), includes the identity of a taxpayer, the fact of any investigation into the taxpayer's return, and "any other data, received by, recorded by, prepared by, furnished to or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person" under the Code. 26 U.S.C. § 6103(b)(2).

Following this proscription, however, Section 6103(k) sets forth a number of exceptions to the general rule against disclosure. Among the enumerated exceptions is the following:

> (6) <u>Disclosure by internal revenue officers and employees for investigative purposes</u>. An internal revenue officer or employee may, in connection with his official duties relating to any audit, collection activity, or civil or criminal tax investigation or any other offense under the internal revenue laws, disclose return information to the extent that such disclosure is necessary in obtaining information, which is not otherwise reasonably available, with respect to the correct determination of tax, liability for tax, or the amount to be collected or with respect to the enforcement of any other provision of this title. Such disclosures shall be made only in such situations and under such conditions as the Secretary may prescribe by regulations.

26 U.S.C. §6103(k)(6); *see generally Rhodes v. United States*, 1995 WL 476252, *2-3 (M.D.Pa 1995). According to the relevant regulations, officers or employees of the Internal Revenue Service are authorized, in connection with the performance of official investigations or audits, to disclose return information in order to establish or verify the correctness or completeness of any return or return information. 26 C.F.R. § 301.6103(k)(6)-1(a)(1)(i); *see also Barrett v. United States*, 1993 WL 379538, *2 (S.D.Tex. 1993).

**B. Alleged Disclosure of the Return Information of Anthony Fortunato and the St. George Companies**

Plaintiffs allege that Goldenberg wrongfully disclosed Anthony Fortunato's, StG-NJ's and StG-CA's return information to Jerome Kootman, Jack Ruse, Frank Molfetta, Robert Molfetta, David San Paolo, Ed O'Donnell, Michael Cho, Peter Ehrenberg, Robert Scamardella, Jorge Cruet, Seth Tendler, and Michael Molfetta during the course of his investigation of the Estate. Defendant correctly argues, however, that Plaintiffs have failed to identify what return information, if any, was actually disclosed and have, therefore, failed to demonstrate an essential fact required to prove a violation of Section 6103.

None of these witnesses testified at their depositions that Goldenberg disclosed that Anthony Fortunato or the St. George Companies were under audit, examination or investigation. A number of witnesses, such as David San Paolo, Robert Molfetta and Ed O'Donnell among others, were asked whether Goldenberg indicated that Anthony Fortunato or the St. George Companies owed or potentially owed taxes. Each witness asked this question stated that such information was not disclosed. Some witnesses testified that they were given no information about the St. George Companies at all. Seth Tender, for one, was specifically asked whether Goldenberg provided any information regarding any of the St. George Companies. His clear answer, with respect to both companies was, "No, he did not."[3] Furthermore, none of the

---

[3] Certain witnesses did testify that Anthony Fortunato or the St. George Companies were mentioned during their conversations with Goldenberg. The mere mention of these plaintiffs, however, does not necessarily constitute the wrongful disclosure of their tax return information. The Court has reviewed all of the letters, depositions and other exhibits presented by both parties in support of and in opposition to the Motion for Summary Judgment. It is clear from these exhibits that Anthony Fortunato and the St. George Companies were referenced only in connection with the primary focus of the investigation, which revolved around whether the decedent had an ownership interest in the St. George Companies. Thus, even if Goldenberg's

instances of disclosure highlighted by Plaintiffs in their opposition brief concern the disclosure of return information specifically concerning Anthony Fortunato or either of the St. George Companies, as opposed to the Estate's return information.

No reasonable jury could find that Goldenberg disclosed the return information of Anthony Fortunato or the St. George Companies. Accordingly, summary judgment is granted with respect to those counts which claim disclosure of Anthony Fortunato's, StG-NJ's and StG-CA's return information to Jerome Kootman, Jack Ruse, Frank Molfetta, Robert Molfetta, David San Paolo, Ed O'Donnell, Michael Cho, Peter Ehrenberg, Robert Scamardella, Jorge Cruet, Seth Tendler, and Michael Molfetta.

**C. Alleged Disclosure of the Return Information of the Estate of Robert Fortunato**

Plaintiffs also allege that Goldenberg wrongfully disclosed the Estate's return information to Jack Ruse, Frank Molfetta, Robert Molfetta, David San Paolo, Ed O'Donnell, Michael Cho, Peter Ehrenberg, Robert Scamardella, Jorge Cruet, Seth Tendler, and Michael Molfetta. The Defendant contends that the Estate's return information was not disclosed or, in the alternative, if return information was disclosed, that such disclosures fit within the exception in Section 6103(k)(6).

Defendant contends that Goldenberg did not state that the Estate was under audit, examination or investigation or that the Estate owed or could potentially owe taxes. Nevertheless, both parties acknowledge that the Estate was the primary focus of Goldenberg's

---

references to Anthony Fortunato or to the St. George Companies could be considered disclosures of return information, such disclosures would be protected by the safe harbor provision of Section 6103(k)(6). Goldenberg referenced these other parties, and their relationship with Robert Fortunato, solely in order to obtain necessary information sought by the IRS.

conversations with these witnesses.  Each testified that Goldenberg asked questions concerning Robert Fortunato and his estate.  Most testified that even without use of the words "audit," "investigation," or "examination," they could infer from the questions asked that the Estate was the subject of an investigation and that Goldenberg's objective was to determine whether Robert Fortunato held an ownership interest in the St. George Companies.  Jack Ruse, for example, explained that "I sensed that he was looking for information regarding Robert Fortunato's ownership of STG."  Robert Scamardella testified similarly, noting that "I don't recall whether he used those exact words, but I came to that conclusion."

Furthermore, there is no dispute that letters were sent to David San Paolo, Jerome Kootman, Jack Ruse, Peter Ehrenberg, Robert Scamardella, Jorge Cruet and Michael Molfetta requesting information "for use in a Federal estate tax matter regarding the estate of Robert Fortunato."  Plaintiffs argue that these letters wrongfully disclosed the Estate's identity, the nature of the tax at issue, and the fact that Robert Fortunato was deceased in a way sufficient to advise the recipients that Goldenberg was conducting a formal investigation.  Plaintiffs cite a number of cases in which the disclosure of such basic facts, especially the existence of a pending investigation, supported valid Section 7431 claims.  *See*, *e.g.*, *Mid-South Music Corp. v. Kolak*, 756 F.2d 23, 25 (6th Cir. 1984) (notice which revealed plaintiff's identification as a taxpayer and fact that plaintiff had been under IRS investigation stated colorable claim of disclosure in violation of Section 6103); *see also Rhodes*, 1995 WL 476252 (M.D.Pa 1995).

However, even if these actions were deemed to be a disclosure of "return information" within the meaning of the statute, such disclosures are authorized by Section 6103(k)(6) if: (1) the information sought concerns "the correct determination of tax, liability for tax, or the amount

to be collected or ... the enforcement of any other provision of [the Internal Revenue Code];" (2) the information is not "otherwise reasonably available;" and (3) disclosure of the return information is necessary to obtain the information sought." 26 U.S.C. § 6103(k)(6); *see also Venen*, 38 F.3d at 104 (3d Cir. 1994); *Rhodes*, 1995 WL 476252 at *2-3 (M.D.Pa. 1995).

First, no reasonable jury could conclude that Goldenberg mentioned Robert Fortunato and the Estate to these witnesses other than to obtain information needed to verify the accuracy of the Estate's return. Plaintiffs do not allege that Goldenberg made disclosures in order to obtain unrelated information about Robert Fortunato or the Estate, nor do they claim that he made any disclosures outside of the context of his investigation.

Second, there is no genuine dispute of fact that the information sought by Goldenberg was not "otherwise reasonably available." Goldenberg testified at his deposition that a letter requesting information directly from the Estate was sent, and that his normal practice is "to get the information from the taxpayer if the information is something within the taxpayer's possession or control." Goldenberg's conclusion that it was necessary to move beyond these initial attempts and interview other witnesses was reasonable, as were the methods he selected. Courts have allowed direct contact with and disclosure to third-party witnesses in similar situations. *See Rhodes*, 1995 WL 476252 at *3 (M.D.Pa. 1995) (allowing IRS agent to send letters requesting information directly to witnesses rather than issuing subpoenas in order to obtain such information).

There is no genuine issue of fact that the questions asked, in context, were necessary to obtain the information sought. Goldenberg testified that it was necessary for him to preface requests for information in his investigations with statements or letters identifying the taxpayer

9

and nature of the issue, in order to assure third-party witnesses that the investigation did not concern them. He testified that he normally reveals that a "call is regarding the estate of so-and-so," and that such disclosures are necessary in order to "[g]ain information. Otherwise, the first assumption is it's regarding their tax liability or their taxes." Indeed, many of the witnesses themselves understood this point on their own. Michael Cho, for one, conceded that "in order to solicit the information he was obtaining from me, he had to provide certain information as to what he was soliciting." This testimony was not materially rebutted nor was its accuracy challenged.

Courts considering analogous situations have concluded that similar disclosures were authorized under the tax code. In *Rhodes v. United States*, the court held that an IRS agent lawfully identified herself, her government position, the authority under which she sought information and a basic statement of the reasons for which she sought the information when she distributed circular letters to the plaintiff's customers. *Rhodes*, 1995 WL 476252 (M.D.Pa. 1995). Similarly, in *Barrett v. United States*, the court held that an IRS special agent could identify himself, his title and division as well as the name of the taxpayer and nature of the inquiry in order to obtain the information sought. *Barrett*, 1993 WL 379538 (S.D. Tex. 1993).

The current situation corresponds to those addressed in *Rhodes* and *Barrett*. In this instance, the purpose of Goldenberg's examination was to determine who owned the St. George Companies. Questions concerning that issue or disclosures made in the process of trying to resolve it were related to and necessary for Goldenberg's efforts. Even if some of the Estate's return information was disclosed by Goldenberg in the course of his interviews, there is no genuine issue of material fact and no reasonable jury could conclude that the disclosures were not

authorized.  Accordingly, summary judgment is granted with respect to those counts concerning the alleged disclosure of the Estate's return information to Jack Ruse, Frank Molfetta, Robert Molfetta, David San Paolo, Ed O'Donnell, Michael Cho, Peter Ehrenberg, Robert Scamardella, Jorge Cruet, Seth Tendler, and Michael Molfetta.

**D. Damages**

Defendant also moves for summary judgment on the form of damages Plaintiffs may recover, arguing that Section 7431 provides for an award of punitive damages only if a taxpayer is entitled to actual damages and if the unauthorized disclosure was willful or grossly negligent. "Willful conduct is that which was done without ground for believing that it was lawful or conduct marked by a careless disregard of whether one has a right to act in such manner. ... Conduct that is grossly negligent is that which is either willful or marked by wanton or reckless disregard of the rights of another." *Barrett v. United States*, 100 F.3d 35, 40 (5th Cir. 1996) (internal quotations omitted).

Plaintiffs have not proffered evidence that Goldenberg made any willful or grossly negligent unauthorized disclosures, relying instead simply on the multiple instances of allegedly unauthorized disclosures themselves.  This is not sufficient. *Contrast, e.g., Siddiqui v. United States*, 359 F.3d 1200 (9th Cir. 2004) (finding that disclosure of a pending criminal investigation to approximately one hundred guests during a "roast" at an IRS agent's retirement party was a grossly negligent violation of Section 6103); *Mallas v. United States*, 993 F.3d 1111 (4th Cir. 1993) (finding that the district court should consider whether the IRS acted willfully or with gross negligence by continuing to disseminate reports describing plaintiffs' criminal convictions even after such convictions had been reversed).

11

As the Fifth Circuit noted in *Barrett*, "had Congress meant for the proof burdens to be the same for both a finding of liability under Code § 7431(b) and punitive damages under Code § 7431(c)(1)(B)(ii), it would have so articulated.  Instead, Congress directed that liability be found only upon a showing of bad faith and punitive damages only upon a showing of willfulness or gross negligence." *Barrett,* 100 F.3d 35, 40 (5th Cir. 1996).  Plaintiffs have made no showing from which a reasonable jury could find that Goldenberg acted with willfulness or gross negligence.  Plaintiffs are thus not entitled to recover punitive damages.[4]

### IV.  CONCLUSION

For the reasons set forth in this Opinion, the Court grants Defendant's Summary Judgment Motion in part.  An appropriate Order will issue.

/s/ Hon. Faith S. Hochberg
Hon. Faith S. Hochberg, U.S.D.J.

---

[4] Because the factual evidence is insufficient to support an award of punitive damages under either reading of the statute, the Court does not reach the question of statutory interpretation raised by the parties.